March 8.
JUDGE COADTER
delivered the opinion of the Court.
The pauper, in this case, claims his freedom on an alleged contract between his master and him, at the time he was purchased at an executor’s sale, that on paying his purchase money, he should be free. He alleges that he has paid accordingly ; but, that his master would not emancipate him. The proof of the contract is by no means clear; although, if that was proved, and such a contract could be enforced in Equity, there is perhaps proof enough in the record, of his master having received some property, to wit, a waggon and three horses, which the pauper claimed as his own, and the proceeds of his *653 earnings by waggoning, to send the case to an account.
There is no case in this Court, that I can find, justifying the idea that a Court of Equity can enforce sucha contract; but, the reverse has been decided, as will be seen hereafter. There is no doubt that a Court of Equity may entertain a bill, where the party has been detained in ^slavery and has a legal title to his freedom, but there is some impediment to the assertion of that right at Law which would, in any other case, justify the interposition of a Court of Equity; as, if the Will, by which he was emancipated, was fraudulently suppressed, or destroyed; or a Deed, prior to that of emancipation, and which had been abandoned, was fraudulently set up as a bar to the recovery at Law; as was lately decided in the case of Talbert v. Jenny, ante, 159.
In the case of Dempsey v. Lawrence, Gilm. 333, the pauper was not so before the Court, as that the merits could be decided, either by the Court below, or by this Court. The bill was dismissed; and this Court only sent the case back, to be placed in a situation in, which it could be tried on the merits. How this Court would have decided, coulu me merits have been gone into, cannot therefore be known ; and consequently, that case can give no rule in this.
The case of John Rose, a pauper, v. Haxall, adm’r of Duncan Rose, junr. was decided in this Court against the pauper. That was a very strong case for the pauper, as I find by my note of it, though I was not present when it was decided. According to these notes, it appears, that this man belonged to the estate of the late Col. Bainster, near Petersburg: that he was the son of Duncan Rose the elder, who, on his death bed, recommended him to the care of his nephew, the intestate of the Appellee. On the sale of Banister’s estate, he was purchased by Dr. Wilson for 901. who sold him to the intestate for the same sum. The intestate then put him apprentice to a carpenter. After his apprenticeship, he worked as a journeyman, and, down to the death of the intestate, worked for himself, and was treated as a free man by his employer, who paid him his earnings. The intestate frequently admitted that he was free, and said that he had paid him his purchase money, and more; and never interfered with him as a slave. His administrator always considered him as free; but finding that he had not been emancipated by Deeds, and not knowing *but that he would be necessary to pay debts, considered it his duty to take him as a slave. He says he is not hostile to his claim to freedom; but suggests, for the consideration of the Court, whether a contract for freedom can be set up in a Court of Equity, and whether any other mode of emancipation than that prescribed by Law can be sustained.
By the Act of May, 1723, 4 Stat. at Large, 132, it is enacted, that no negro, mulatto, or Indian slave, shall be set free on any pre-tence whatever, except for some meritorious service to be adjudged and allowed by the Governor and Council, and license therefor first had and obtained; and if they shall be otherwise set free, it shall be lawful for the Church-wardens, and they are required, to take them up and sell rhem as slaves, &c. This is re-enacted by the Act of October, 1748, 6 Stat. at Lar. 112.
By the Act of May, 1782, 11 Stat. at Large,, 39, reciting, that application had been made to empower persons disposed to emancipate their slaves, to do so, it is enacted, that it shall hereafter .be lawful for any person, by his last Will and Testament, or by any other instrument in writing under his or her hand and seal, attested and proved in the County Court by two witnesses, &c. to emancipate his slaves or any of them, &c. This act is brought into the revision of 1794, ch. 103, sec. 36, by the 26th section of which, 1 Rev. Code, 433, it is made unlawful to permit slaves to go at large, and hire themselves out, under penalty of being apprehended and sold; and is also, brought into that of 1819, sec. 53, p. 433.
It has also been decided by this Court, that a Deed of emancipation, not recorded in the proper Court, but in some other, gives no title to freedom, until properly recorded. Givens v. Mann, 6 Munf. 191 ; Lewis v. Fullerton, 1 Rand. 15.
On the whole, the Decree must be affirmed.